LeaIN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| **CINDY POWELL,** | : | Case No.: 2:09-CV-600 |
| | : | |
| **Plaintiff**, | : | |
| vs. | : | **JUDGE ALGENON L. MARBLEY** |
| | : | **Magistrate Judge Deavers** |
| **TIME WARNER CABLE, INC.,** *et al.* | : | |
| **Defendants**. | : | |

## **OPINION & ORDER**

### **I. INTRODUCTION**

This matter is currently before the Court on Defendant Time Warner Cable, Inc., *et al.*'s ("Time Warner") Motion for Summary Judgment. (Doc. 40). The Plaintiff Cindy Powell ("Powell") filed a Complaint in which she alleged three claims against Time Warner: (1) a violation of the Equal Pay Act; (2) gender discrimination in violation of O.R.C. 4112.02(A) and Title VII; and (3) retaliation in violation of O.R.C. 4112.01(I) and Title VII. For the reasons set forth below, Defendants' motion is **DENIED** in part and **GRANTED** in part.

### **II. BACKGROUND**

Time Warner provides cable television and related services to businesses and individuals. Time Warner has three divisions: (1) Mid-Ohio; (2) Northeast Ohio ; and (3) Southwest Ohio. Within the Mid-Ohio division, there are three "regions": (1) Northwest; (2) Central; and (3) Southeast.  Powell was hired by Time Warner in April 2001 as a Field Operations Administrator for the Central region of the Mid-Ohio division. Prior to being hired by Time Warner, Powell

had no experience in the cable television business. Powell had a number of supervisors at the beginning of her Time Warner tenure, but in 2003, she began to report to Mr. Jos Ortiz ("Ortiz").

Beginning in late 2003 or early 2004, Time Warner began development of a software called, "Mobile Workforce Management." This software automatically directed field technicians to their jobs via an electronic handheld unit. In conjunction with implementing this new software, Time Warner created the position of Mobile Workforce Administrator to manage the program. Time Warner selected Andrew Horner ("Horner") to fill this position. Powell continued to perform her scheduling duties after the Mobile Workforce Administrator position was created.

In October 2004, Time Warner created and posted the new position of "Manager of Installation and Scheduling," which was also known as the "Contract Manager" position. Powell applied for this position, but the job ultimately went to Chris Schafer ("Schafer") in early 2005. Schafer left this position at some point in 2007.

In March 2008, Brad Wakely ("Wakely") was assigned to manage technical operations for both the Central and Northwest Ohio regions. Upon assuming this position, Time Warner alleges that Wakely proceeded with a reorganization plan that resulted in the combination of the Mobile Workforce Management position held by Horner and the Scheduling and Routing position held by Powell. Time Warner decided to retain Horner, but terminated Powell's employment on May 1, 2008.

On October 13, 2008, the Plaintiff filed a charge of discrimination with the Equal Employment Opportunities Commission ("EEOC"). On July 1, 2009, the EEOC issued the Plaintiff a "right-to-sue" letter. On July 13, 2009, the Plaintiff filed a Complaint alleging four

claims against the Defendant: (1) gender discrimination in violation of R.C. 4112.02(A); (2) gender discrimination in violation of Title VII; (3) retaliation in violation of R.C. 4112.02(I) and Title VII; and (4) violation of the Equal Pay Act.

On December 23, 2010, the Defendants filed a Motion for Summary Judgment. (Doc. 40). On February 3, 2011, the Plaintiff filed a Memorandum in Opposition to this Motion. (Doc. 54). On March 3, 2011, the Defendants filed Reply to the Plaintiff's Memorandum in Opposition. (Doc. 57). This matter is currently before the Court.

### III. STANDARD OF REVIEW

Summary judgment is proper if "there is no genuine issue as to any material fact [such that] the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(C). But "summary judgment will not lie if the . . . evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). In considering a motion for summary judgment, a court must construe the evidence in the light most favorable to the non-moving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). The movant therefore has the burden of establishing that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co.*, 12 F.3d 1382, 1388-89 (6th Cir. 1993). The central inquiry is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Anderson*, 477 U.S. at 251-52. But the non-moving party "may not rest merely on allegations or denials in its own pleading." Fed. R. Civ. P. 56(e)(2); *see Celotex*, 477 U.S. at 324; *Searcy v. City of Dayton*, 38

F.3d 282, 286 (6th Cir. 1994). The non-moving party must present "significant probative evidence" to show that there is more than "some metaphysical doubt as to the material facts." *Moore v. Philip Morris Co.*, 8 F.3d 335, 339-40 (6th Cir. 1993).  When ruling on a motion for summary judgment, a district court is not required to sift through the entire record to drum up facts that might support the nonmoving party's claim. *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989).  Instead, the Court may rely on the evidence called to its attention by the parties.  *Id*.

## IV. LAW & ANALYSIS

In her Reply filed on February 3, 2011, the Plaintiff abandoned her Equal Pay Act claim. Thus, the Plaintiff alleges three remaining claims against the Defendants:(1) gender discrimination in violation of  R.C. 4112.02(A); (2) gender discrimination in  violation of Title VII; (3) retaliation in violation of R.C. 4112.02(I) and Title VII. The Defendants assert that no genuine issue of material fact exists regarding any of these claims. Each of the Plaintiff's claims will be addressed in turn.

### A. Gender Discrimination

The Defendants claim that no genuine issue of material fact exists regarding whether Time Warner discriminated against Powell on the basis of her gender. They assert that their dismissal, promotion, and compensation decisions were driven by business efficiency concerns, not gender. The Plaintiff, however, alleges that she has presented sufficient evidence to demonstrate that an issue of fact exists regarding whether gender discrimination occurred, and, therefore, the Defendants' Motion for Summary Judgment on these claims should be denied.

Because the analysis for gender discrimination claims are identical under federal and state law, we will address these claims together. *See Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 469 (6th Cir. 2002); *Plumbers v. Steamfitters Joint Apprenticeship Committee v. Ohio Civil Rights Comm.*, 66 Ohio St.2d 192, 196 (1981). In Title VII actions, such as this, "a plaintiff may establish discrimination either by introducing direct evidence of discrimination or by proving inferential and circumstantial evidence which would support an inference of discrimination." *DiCarlo v. Potter*, 358 F.3d 408 (6th Cir. 2004) (citing *Kline v. Tenn. Valley Auth.*, 128 F.3d 337, 348 (6th Cir.1997)).

When using circumstantial evidence to create an inference of discrimination, the burden-shifting framework first announced by the Supreme Court in *McDonnell-Douglas* applies. Under this framework, the plaintiff carries the initial burden of establishing by a preponderance of the evidence a prima facie case of discrimination by his or her employer. In order to demonstrate a prima facie case, the plaintiff must show that: (1) she was a member of a protected class; (2) she suffered an adverse employment action; (3) she was qualified for the position; and (4) she was replaced by someone outside the protected class or was treated differently than similarly situated, non-protected employees. *Wright v. Murray Guard, Inc.* 455 F.3d 702, 707 (6th Cir. 2006). In a termination claim, the fourth element varies depending on whether the dismissal was part of a Reduction in Force ("RIF") strategy. If a termination is part of a legitimate RIF strategy, it is a mixed motive claim, and requires "additional, direct, circumstantial or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Blair v. Henry Filters*, 505 F.3d 517 (6th Cir. 2007) (quoting *Rowan v. Lockheed Martin Energy Sys., Inc.*, 360 F.3d 544, 548 (6th Cir. 2004). A plaintiff who successfully

establishes a prima facie case receives the benefit of a presumption that the employer unlawfully discriminated against him. *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089. The burden then "shifts to the defendant 'to articulate some legitimate, nondiscriminatory reason for the employee's rejection.' " *Id*. at 253, 101 S.Ct. 1089 (quoting *McDonnell-Douglas*, 411 U.S. at 802, 93 S.Ct. 1817). The affirmative defenses qualifying as legitimate dismissal reasons include: (1) a seniority system; (2) a merit system; (3) a system which measures earnings by quantity or quality of production; or (4) any factor other than sex. *Balmer*, 423 F.3d at 612 (citing *Kovacevich v. Kent State Univ.*, 224 F.3d 806, 826 (6th Cir. 2000). Finally, "should the defendant carry this burden, the plaintiff must then have an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* Generally, to show pretext, a plaintiff must demonstrate "that the proffered reason: (1) has no basis in fact; (2) did not actually motivate the defendant's challenged conduct; and (3) was insufficient to warrant the challenged conduct." *Wexler v. White's Fine Furniture, Inc.*, 317 F.3d 564, 576 (6th Cir. 2003) (en banc) (quoting *Dews v. A.B. Dick Co.*, 231 F.3d 1016, 1021 (6th Cir. 2000). Although the burdens of production shift, throughout the *McDonnell* framework when circumstantial evidence is involved, "[t]he ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff." *Id.; See also Talley v. Bravo Pitino Rest., Ltd.*, 61 F.3d 1241, 1246 (6th Cir.1995).

In this case, because it is uncontroverted that Powell relies on circumstantial evidence for her gender discrimination claims, the *McDonnell-Douglas* framework properly applies. The Defendants claim that no genuine issue of material fact exists regarding whether the Plaintiff has

properly pled a prima facie case that she suffered gender discrimination. Powell argues three bases for her claim of gender discrimination against her by Time Warner: (1) her termination; (2) Time Warner's transfer and promotion decisions; and (3) the compensation she received.

Both sides agree that Powell, as a woman, is a member of a protected class. Thus, the first requirement of the *McDonnell-Douglas* prima facie case is met for each of these claims. The threshold issue, at this summary judgment stage, therefore, is whether the Plaintiff has presented sufficient evidence to show that the remaining three factors necessary for proving the prima facie case have been satisfied; namely: (1) whether Powell suffered an adverse action; (2) regarding a position for which she was qualified; and (3) that the position was given to someone from a non-protected class or she was treated differently from similarly situated, non-protected colleagues. If the Defendant can demonstrate that there is no genuine issue of material fact as to whether Powell has presented insufficient evidence to fulfill these final three factors of the prima facie case, summary judgment should be granted.

**1. Termination**

Regarding the Plaintiff's termination claim, as was previously mentioned, it is undisputed that Powell is a member of a protected class. Further, this Circuit has found that termination is an adverse employment action. *Hollins v. Atlantic*, 188 F.3d 656, 662 (6th Cir. 1999). Additionally, the parties do not dispute that Powell was qualified for the Scheduling and Routing position from which she was terminated. Thus, only the fourth *McDonnell* factor, whether someone from a non-protected class was given her position or if she was treated differently from a similarly-situated, non-protected colleague, is at issue for summary judgment.

As a threshold matter, the parties dispute whether Powell's dismissal was part of a Reduction in Force ("RIF") strategy. This Circuit has found that if an employee is dismissed as part of a RIF, then the fourth element of the prima facie case has a heightened requirement of providing "additional, direct, circumstantial, or statistical evidence tending to indicate that the employer singled out the plaintiff for discharge for impermissible reasons." *Barnes v. Gen. Corp., Inc.*, 896 F.2d 1457 (6th Cir. 1990). If, however, the dismissal was not part of a RIF, then the fourth element of the *McDonnell* is unchanged.

In this case, Time Warner claims that Powell's termination was part of a larger shift in the Defendant's organizational structure, and thus the heightened requirement of "additional evidence" should apply to the Plaintiff in the present action. The Plaintiff makes two persuasive arguments to dispute that Powell's dismissal was made pursuant to a reorganization plan. First, the Plaintiff disputes such a RIF occurred because Powell's direct supervisor, Ortiz, testified in his deposition that he was not informed of the decision to terminate Powell until just days before her May 1, 2008 termination. (Ortiz Dep., p. 123). While it is not dispositive that Ortiz had no knowledge of the alleged RIF plan, a reasonable fact-finder could find that the fact Powell's direct supervisor was not aware of her dismissal due to a restructuring within the Technical Operations department prior to her termination suggests the RIF is a pretext for a discriminatory dismissal. Thus, a genuine issue of material fact exists as to whether a RIF in fact occurred.

The Plaintiff also asserts that the fact Powell alone was affected by the alleged RIF suggests no such RIF actually occurred. In response, the Defendants identify three other employees who they claim were also affected by the alleged reorganization, but none of their examples is persuasive. Time Warner alleges Schoenwolf's position was eliminated as part of

the RIF. The very evidence they point to as support for this position, however, demonstrates a factual dispute exists regarding the circumstances of his dismissal. Time Warner cites Leonard's deposition in which he states that Schoenwolf "posted for a job in...Maine" and that after his posting, "the decision was made not to backfill him." (Leonard Dep., p.65-6) A reasonable fact-finder could interpret Leonard's statements to mean that Schoenwolf left Time Warner on his own accord and was not subject to a RIF-related termination.

Similarly, Time Warner argues that Wakely took on Schoenwolf's responsibilities after he transferred to the position in Maine is further evidence that the RIF was not pretextual. (Doc. 57, p. 4). But, a reasonable fact-finder could consider the evidence of Wakely taking on these additional responsibilities and Powell's dismissal and conclude that these two occurrences, though both true, were not part of a RIF plan. Thus, despite this evidence, a genuine issue of material fact exists regarding whether a RIF actually took place.

Finally, Time Warner cites Ganley's dismissal as being pursuant to the alleged RIF. (Doc. 57, p. 4). In support of this position, the Defendants cite a portion of Leonard's testimony. Leonard only testified, however, that Ganley was dismissed in May 2008, and that his dismissal came about as a result of discussions Leonard had with Schoenwolf. *(*Leonard Dep., p. 53-53). Tellingly, in oral argument, the Defendant conceded that Wakely did not follow Schoenwolf's organization plan when he decided to terminate Powell. Taking this admission and Leonard's testimony in the light most favorable to the Plaintiff, a reasonable fact-finder could conclude that Ganley was not dismissed pursuant to a RIF even though he was eliminated around the same date as Powell. Indeed, as in the case of Schoenwolf's departure, one might take this evidence

and conclude that Ganley's and Powell's termination were entirely unrelated. Thus, there is a genuine issue of material fact about whether Powell was dismissed for discriminatory reasons.

Because several genuine issues of fact exists about whether a RIF occurred, genuine issue of material fact also exists regarding whether the Plaintiff has pled a prima facie case of discrimination to satisfy the *McDonnell-Douglas* standard for Title VII discrimination claims and if "additional evidence" is required pursuant to *Barnes*. Summary judgment, therefore, is not appropriate, and the Defendants' Motion on this claim is **DENIED**.

### 2. Transfers/Promotion

In her Complaint, Powell also argues that her failure to be assigned to three positions constituted gender discrimination: (1) Mobile Workforce Administrator; (2) Contract Manager; and (3) Director of Installation and Scheduling. Time Warner alleges that she has failed to present a prima facie case of discrimination based on her not receiving any of these positions. As was the case for the termination-based gender discrimination claim, the *McDonnell-Douglas* framework applies. Thus, in order to succeed at this summary judgment stage, the Defendants must prove that no issue of material fact exists about whether the Plaintiff has failed to fulfill the four factors necessary to demonstrate a prima facie case of discrimination.

Regarding the Mobile Workforce Administrator position, the parties contest if an issue of fact exists as to whether Time Warner's appointment of Horner to this position in 2004 constituted an adverse employment action necessary to fulfill the second factor of the *McDonnell* test. The Defendants allege that because this position, when it was originally created in 2004, was lateral to the scheduling position Powell held, it cannot be considered an adverse employment action. The Plaintiffs rely on *Stewart* and *Czekalski* in arguing that even if the new

position was lateral, the failure to give Powell the position could constitute an adverse employment action.

These D.C. Circuit cases, however, are not analogous to the present case, and, furthermore, the Sixth Circuit has established precedent on this issue. In *Momah v. Dominguez*, the Sixth Circuit held that a purely lateral transfer or denial of the same that does not result in a decreases in title, pay, or benefits, cannot be an adverse employment action for discrimination purposes. *Momah v. Dominguez*, 239 Fed. Appx 114, 123 (6th Cir. 2007) (citing *Hollins v. Atlantic Co.,* 188 F.3d 652, 662 (6th Cir. 1999)). Thus, because the Plaintiffs concede the Mobile Workforce Administrator position was lateral to Powell's, to succeed at this summary judgment stage, the Defendants must demonstrate that no issue of fact exists that Powell's failure to procure this position did not result in a decrease in title, pay, or benefits.

     The Defendants assert that neither Powell's pay, title, or benefits decreased as a result of not receiving the Mobile Workforce Administrator position, and thus, pursuant to *Momah*, no issue of fact exists as to whether Powell's failure to receive this position was an adverse employment action. Powell presents no evidence to dispute this assertion. Instead, she relies on the D.C. Circuit court cases to argue against the application of the *Momah* standard at this summary judgment stage. This argument, however, does not counter the Defendants' position that Powell's failure to receive the Mobile Workforce Administrator position was not an adverse employment action. Thus, no reasonable fact-finder could conclude that Powell has presented a prima facie case of discrimination under the *McDonnell* factors, under the evidence provided. Summary judgment, therefore, is **GRANTED** for this claim.

The Plaintiff also alleges Time Warner's assignment of the Contract Manager position to Schafer is evidence of gender discrimination. On this point, the parties dispute whether Powell was qualified for the position, one of *McDonnell* factors necessary to demonstrate a prima facie case. The Defendants allege that Powell herself stated during her deposition that she was not qualified for many of the tasks the Contract Manager position required, including: (1) negotiating with contractors; (2) assessing their performance; and (3) setting metrics. (Doc. 57, p. 36). A review of Powell's deposition, however, is not as clear as the Defendants' argument suggests. In fact, during her deposition, Powell's responses to questions regarding the tasks for which the Contract Manager was responsible are ambiguous as to whether she believed she was qualified. (Powell Dep. I,, p. 107-11). Thus, a genuine issue of material fact does exists as to whether Powell was qualified for the Contract Manager position, and the Defendants' Motion for Summary Judgment on this claim is **DENIED**.

Finally, the Defendants argue that Powell has not pled evidence sufficient for a prima facie case of discrimination based on her not receiving the Director of Installation and Scheduling position. The Defendants argue that summary judgment is appropriate for this claim since the Director of Installation and Scheduling position assumed the tasks for which the Contract Manager had previously been responsible, a position for which they allege the Plaintiff admitted to being unqualified. (Doc. 57, p. 29). This argument, however, fails because this Court has found that an issue of fact does exist as to whether Powell was qualified for the Contract Manager position, and, therefore, it follows that an issue of fact also exists regarding Powell's qualification for the Director of Installation and Scheduling position, which assumed the duties

of the Contract Manager role. Accordingly, summary judgment is not appropriate, and the Defendants motion on this basis is **DENIED**.

### 3. Compensation

The Plaintiff's final basis for alleging Time Warner committed gender discrimination against her is that she received less compensation than her similarly situated male colleagues, Horner and Schafer. Specifically, Powell claims that Time Warner failed to give her: (1) a 60-cent per hour wage increase; and (2) equity raises. Thus, at issue is if there is a genuine issue of material fact regarding whether Powell has presented evidence to satisfy the fourth *McDonnell* factor. In their Motion for Summary Judgment, Defendants dispute both of the Plaintiff's claims because, they allege, Powell earned more than Horner and Schafer even after they received the $0.60/hour pay increase and Horner received the equity pay increases associated with the Mobile Workforce Administrator position. The Defendants do not, however, address Powell's allegations that because she was regularly working 60 to 70 hours per week and took on some of Ganley and Horner's responsibilities, her compensation was effectively less than Horner's and Shafer's., despite the fact that her absolute wage was higher (Doc. 54, p. 26). Taking these allegations as true, a reasonable fact-finder could conclude that Powell was being compensated differently than similarly situated male employees who are part of a non-protected class, and that, therefore, Powell has pled a prima facie case of discrimination. Thus, this Court **DENIES** the Defendants' motion for summary judgment on this claim.

### C. Retaliation

Generally, claims for retaliation under both Ohio and federal law are assessed using the *McDonnell-Douglas* evidentiary, burden-shifting framework. *Wrenn v. Gould*, 808 F.2d 493, 500 (6th Cir. 1987). Thus, as a threshold matter, a Plaintiff must demonstrate a prima facie case of retaliation. A prima facie case of retaliation requires that: (1) Powell was engaged in a protected activity; (2) the person who allegedly retaliated against her knew of the exercise of her protected activity; (3) that Time Warner subjected her to a materially adverse employment action; and (4) that there is a causal connection between the adverse employment action and the protected activity. *Ladd v. Grand Trunk W. R.R., Inc.*, 552 F.3d 495, 502 (6th Cir. 2009). The burden then shifts to the Defendant to produce evidence of a legitimate, nondiscriminating reason for its actions once the Plaintiff presents sufficient evidence to make out a prima facie case. *Avery Dennison*, 104 F.3d at 862 (citing *Burdine*, 450 U.S. at 253). If the defendant satisfies this burden, the plaintiff must then demonstrate by a preponderance of the evidence that the legitimate reason offered by the defendant was not its true reason, but instead was a pretext designed to mask intentional retaliation. *Id*. Furthermore, it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation." *Reeves v. Sanderson Plumbing Products*, 530 U.S. 133, 147 (2000); *Abbott v. Crown Motor Co.*, 348 F.3d 537, 542 (6th Cir. 2003).

In this case, the Plaintiff claims the protected activity in which she engaged was complaining to Ortiz about gender discrimination, and that the Defendant Time Warner engaged in retaliatory conduct by terminating her after she made this complaint. In support of her claim, Powell cites a conversation that took place between Andrea Hoy ("Hoy"), a Time Warner human resources employee, and Leonard, in which he claimed that Powell's dismissal was related to her

complaint to Ortiz about alleged gender discrimination. The Defendants asserts, however, that the Plaintiff has failed to show that Wakely, who made the final decision to eliminate Powell's position, or any other person alleged to have made the decision to terminate Powell, had knowledge of Plaintiff having lodged such a complaint with Ortiz. The Plaintiff does not present any evidence to contradict this assertion. Thus, the Defendant Time Warner persuasively argues that even taking the facts alleged by the Plaintiff as true, no genuine issue of fact exists as to whether she has shown a nexus between the protected activity and the allegedly retaliatory conduct, one of the necessary factors to present a *prima facie* case of retaliation pursuant to *Reeves*. Summary judgment, therefore, is **GRANTED** on the retaliation claim.

## V. CONCLUSION

The Court hereby finds that the Defendants have successfully demonstrated that no issue of material fact exists regarding whether the Plaintiff suffered gender discrimination for: (1) not receiving the Mobile Workforce Administrator Position and (2) Time Warner's retaliatory conduct. Thus, the Court **GRANTS** the Defendants' Motion for Summary Judgment for these claims.

The Defendants, however, have failed to demonstrate that they are entitled to summary judgment on the remaining claims: (1) the gender discrimination claim based on Powell's termination; (2) the gender discrimination claim based on compensation; and (3) the gender discrimination claim based on promotions for the Contract Manager and Director of Installation and Scheduling positions. The Court, therefore, **DENIES** the Defendants' Motion for Summary Judgment on these claims because there are genuine issues of material fact as to whether the Plaintiff suffered gender discrimination on these bases.

-16-

**IT IS SO ORDERED.**

                                                s/Algenon L. Marbley
                                                **ALGENON L. MARBLEY**
                                                **UNITED STATES DISTRICT COURT**

**DATED: June 30, 2011**